John Edmonds. May it please the court, John Edmonds for the Appellant Digitech Image Technologies. Mr. Edmonds, let me ask this, just as a preliminary matter. You've given us ten volumes on the record, and it seems to me that it's quite excessive. My clerks found a lot of duplication in there. Do you really need to give us this pile of documents in order to help you in your case? Well, apologies if that was problematic. I'll show you in the future to not do that. All right. Don't duplicate the record. Understood. It's more than a matter of saving trees. It saves our resources, and we just don't have time to read through duplicated materials and things of that nature. I understand, Your Honor. And just – there were ten different judgments, I believe. So we wanted to – even though the record of each judgment is repetitive, we didn't want the court saying you didn't give us the record of this judgment, so we can't rule on it. But your statement is well taken and will be used in the future, Your Honor. With respect to the 415 patent, the claims in this patent cover a specific concrete device profile and specific methods for generating a specific concrete device profile. It's an application that's implemented in connection with digital image processing and specifically correcting distortions of digital images in digital image processing systems. It's an improvement in technology of digital image processing, and it's an integral part of a digital image processing system. We have a number of – besides the language – If you look at device profile and what that means, basically you're talking about data, correct? Well, I think that's an oversimplification of it. The device profile – our definition of a device profile is hardware or software within a digital image processing system or a tag that's attended or embedded in a digital image, which describes the properties of a device in a digital image processing system. It's not mere – it comprises data, but it's not mere data. And that's – of course, that's – you're speaking, I think, specifically to Claim 1 and the apparatus claims. The method claims are somewhat of a different matter. Well, why don't we just start, then, with the apparatus claim. Can you explain to me what your answer was to Judge Reyna again? Because a tag is just another form of data, so I'm not sure how that helps you in any way. So why don't you – even if you're right about that, which I don't know that you are, but even if you are, I don't know that that helps. So tell me again what your answer was. Well, I guess when Judge Reyna said data, I guess I'm interpreting that as some kind of an abstract concept or just some kind of collection of data. Well, a database – it looks to me like your device profile is a database. I wouldn't call it a database. Let me start with digital image processing. Well, that's not one of the claim limitations. Digital image. There's nothing about digital image processing that is one of the claim limitations. Well, it's a device profile for describing properties in a digital image reproduction system. So, I mean, digital images are ultimately – if you break it down to that, you'd say digital images. It goes on and it says comprising of first data for describing and then second data for describing. So when we go back and look at a device profile for describing, then your claims go on and tell us that you're really just talking about data. I think ultimately I'd say a digital image is data, something that's appended to a digital image. When you claim a digital image, you claim a device profile, which has first data that describes some characteristic and second data that describes some characteristic. Those are just two variables. When it's tagged to a digital image, it's part of a digital image. There's nothing in here about a digital image. This claim – not a single claim in the patent uses the word digital image. Well, the – I'm sorry. They do in the preamble, but nobody's argued the preamble's a limitation. The district court acknowledged that a device profile can be a tag. When you read the claims in view of the specification, I think that's made clear. Well, even if you're right about that, I don't understand how that helps you. That's just another data point. So now there's three data points. I don't think that the case law that's been cited – Neutron has to do with transient signals. Warmerdam has to do with abstract concepts. There are many, many patents in the field of digital image processing. Well, yeah, I'm pretty sure the Supreme Court would overrule what we did in Nguyen right about now. But even if somehow that escaped happening, I don't see how this is a digital signal as opposed to simply a compilation of data. It's not a digital signal like you did. It's different. I mean, there are many claim – there are many decisions from this court that have upheld claims that are similar to these claims, analogous to these claims. Well, there are lots of decisions of our court that have upheld lots of claims under 101, and, you know, all up in smoke at this point. So what is it about these claims in particular that makes them patent eligible because they just look like databases? I don't know what's up in smoke at this point. Most of the jurisprudence at this point has to do with business methods and abstract ideas. This is a traditional field of technology, digital image processing. And I think the court should be aware that not just this case, but some broad brush against this, an important aspect of digital image processing, I think would call into question many, many patents in this field because digital image processing – I don't understand. This is a database. This doesn't have anything to do with digital image processing. If your claims were to a formula for digital image processing, namely take the image on the front end, modify it in a device-independent way, output it, and it will have a better quality. That's a whole different ballgame. That's like a manufacturing process. Your claims aren't directed to that at all. Your claims are directed to only the data that's going to be used ultimately in that process. I'd focus, of course, in addition to the preambles, I'd also focus, of course, specifically with the Method Claims Claim 10, the generating steps, because I think what I heard Your Honor saying was that it didn't involve the digital processing system, that it didn't involve the collection of data. The Method Claim 10 talks about, in the relevant parts, generating one set of data, generating a second set of data, combining the two, and you have the device profile. And if you lose on the device profile, what is generating data to come up with a device profile that's data itself get you beyond just pure data still? A method for generating data seems – I mean, it still seems pretty abstract to me. Well, in terms of – it seems we're switching gears somewhat in terms of you're saying it's an abstract concept. Well, clearly, the method describes some kind of process. Yes. So, at least in my view, that seems to be within the broad parameters of 101, because the word process is there, but it's still pretty abstract, isn't it? It seems like it's very much like Benson, where you took one type of numbers and binary numbers or whatever it was and did it into whatever the system is in Benson. You're taking data and generating it to come up with a database. I'd say it's much more like ResearchCorp, which had to do with halftone images, something very similar to this field. It's much more similar to Allopat, which had to do with converting waveform data symbols. It's much more similar to Abily, which had to do with CAT scan processes. There are many, many art areas, including this one, that involve data. So, Allopat and all of those cases are converting waveforms, and what was at issue was the entire oscilloscope or the entire process. You would be on good standing if you had claimed the process of improving the quality of digital images using certain kinds of data. That's not what you claimed. You claimed a method of simply collecting that data and putting it in a single place, i.e., the device profile, for use by some manufacturing process. But you didn't claim the process. So, when you're analogizing to Allopat and these other cases, they claimed it's a process. Well, when we talk process, I think you're talking specifically about Claim 10. I guess we respectfully disagree, because it's a device in a digital image processing system, and the generation steps are part of the process in that digital process. Claim 10 says that you're looking at a method of generating a device profile. So, it's a method to generate a device profile. We turn around and we say, well, what is a device profile? And it's data. And the district court found that that was not patent eligible, because you were claiming an abstract idea. So, now it seems to me that your method is directed to generating an abstract idea. Well, I think, first of all, we disagree with the district court's finding it's an abstract idea. If you start with the premise that a device profile is an abstract idea, and then you say that, well, all you're doing is generating an abstract idea, it seems to me that you've answered your own question. If we agree with the district court on the systems claim, then are you saying that your method claim would fall? No, no, because when you look at a method claim or a process claim, you ask whether it's an application. Even if you accepted, which we respectfully disagree with, that a device profile is an abstract idea, the question is whether it's an application of an abstract idea. And then you look to whether it has meaningful limitations in the claim, and there are meaningful limitations in this claim. It doesn't cover all device profiles. It doesn't cover all device profiles that are device-dependent. It doesn't cover all device profiles that are in a device-independent public space. I agree. If you were to set out the manipulation of the data itself, or maybe had the processor that you're talking about, the sensor processor, that follows part of the manipulation of the data that ultimately ends with the device profile, then I think you would be on good ground, but you don't have that. What you're doing is you're generating a device profile, and then later that device profile, which is just data, is used in a specialized computer. But that's where we stop. I mean, what is it that you – that's not the method that you're claiming. You're simply claiming a method to create a device profile. When we look in there, there is no – your specialized computer is elsewhere. Well, I disagree that it's elsewhere, because the claims have to be read in light of the specification. I think the specification makes absolutely clear that this is part of a digital image processing system. A human can't do this with pen and paper. A human can't do this in their mind. It's way too complex. It's just impossible. You have to have a digital image processing system to do the generating step, and it's there in the preamble as well. So I disagree that the computer only comes in at the end. I think from what I hear of this Court's pronouncements, if you simply – if you explicitly use the word computer in the claims, that wouldn't be enough. You still have to look at the claim itself and say, is it tied to – meaningfully tied to a computer? Yes, it is. Is it – could it be implemented without a computer? No, it's not. I don't really understand how it's meaningfully tied to a computer. It seems to me that, at least for the color thing, if it was a very crude device that only captured a very low level of pixels, you could do it by hand. You could take some measurements from the image system and say they're doing it here and compare it to the universal system, and you could come down and say, well, this device comes off of this – comes off of the universal system by XML. So this device profile is you need to adjust this particular color up, this particular color down. That can all be done by hand. I mean, I understand that if it's a really high level pixel, it might take decades to do it by hand, and that's why a computer is useful, but it doesn't say anything about necessarily using it in any kind of processing system here. The claims are very – to the data and the methods for generating the data. It's not to – I don't mean to repeat my colleagues, but it's not to the processing system itself. To address your first point, this came up on summary judgment, and so the summary judgment evidence, we had a declaration from an expert in the field, Dr. Canizzo, who specifically said you can't do it in your head, and I think that you're – you have a much of an oversimplification of how a system like this would work. First of all, you just mentioned color data. There's also spatial data. In addition, all the myriad of variables that go into taking a photograph, it's just impossible. It's set forth unrebutted. I mean, we had lawyers who argued that, oh, you can do it in pen and paper, but there was an expert declaration that said you can't. I think that this court on summary judgment is required to view those facts in the most favorable to the appellant, in which case on that point, we should win. Instead of pen and paper, couldn't you do it through the actual imaging device itself? Let's say you have your camera. You're taking a picture of a landscape of mountains. You notice a bright sun. You notice dark shadows, and then you say, I'm going to go to an ISO 400. I'm going to go down to an S-stop 2. No, I'll go to an S-stop 4, and I'm going to open the aperture for so long so I can fade the mountains in, or I'd rather fade them out. Ultimately, this is something that you can – that a human can do. No, that seems to me missing the point of the invention. In the prior art, there were device-dependent solutions. In other words, you'd have to calibrate each device for each other. This has in part to do with a device-independent solution. In other words, when that image is processed by the digital processor, you get something that is device-dependent. In other words, you understand what device you came from, but what result is in a device-independent color space, so it's applicable to other devices down the line. That's one of the inventive steps of this claim. What you described, a human just simply can't do. Actually, your expert said a human could do it at page JA-267. It would just be impractical and unacceptable in quality. That was your expert, not mine. Go ahead. Keep going. Yeah, I mean, you're quoting from part. He said calculations related to device profiles could not possibly or practically be done by hand. It had to be decided in milliseconds. I don't, you know, if the court's test is now that humans, hundreds of years, could somehow figure it out, I don't think that that's a test. I think there has to be a practical and meaningful test, at a minimum, and that to say that it's theoretically possible that a human might be able to do it. You've used up all your rebuttal time. All right. I'll give you a couple minutes, but we need to move on. Thank you, Your Honor. Mr. Lemley? May it please the court, Your Honor, Mark Lemley on behalf of defendants. Your Honor, there's considerable uncertainty at this point about the proper scope of patentable subject matter, but this court doesn't have to resolve any of those debates in order to affirm the judgment here. District Court rejected as unpatentable two sets of claims. The device profile claims, as this court indicated, are directed solely to data. They are generated by data. They include only data. And, indeed, the preamble itself, which refers to a device profile as describing the characteristics of a digital information processing system, makes clear that it's data. Now, instinctively, say I agreed with you that a database, simply a claim to a database, isn't patent eligible under 101. Is it because it doesn't fit in one of the four statutory subject matters, or is it because it's an abstract idea? I was sort of struggling with how exactly analytically you get from point A to point B. Your Honor, I think both are true, and either is an independent ground for affirmance. What this court has said is we don't have to get to the abstract idea question if the invention doesn't fit within the four statutory categories. The District Court found that as to the device profile claims, it didn't fit within any of the four statutory categories. And I think In re Neuten, which I frankly do not know how to pronounce, is precisely on point here. Information cannot be a machine, cannot be a manufacturer, cannot be a composition of matter. And so the District Court correctly concluded that information, which is all that we're talking about in the device profile claims, is not in the four statutory categories. And I think at that point the inquiry can end. We don't need to worry about what the Supreme Court might do. The problem is that all systems claims utilize information. Your Honor, a claim to a system that utilizes information would satisfy the first part of this test, would be within the four statutory categories. In fact, this patent has such a claim, Claim 18. They didn't assert it in this case. So it's not that it's impossible to claim an invention out of this patent. It's that the claims they have chosen to assert are not directed to any of the four categories of statutory subject matter. And I think at that point, as to the device profile claims, the inquiry can end. You mean only the device profile? Yes, Your Honor. The method claims are clearly a process. So if you accept that the device profile claims are not patentable subject matter, the question then becomes, what about Claim 10, which does say it's a method? And what I suggest is that a method of generating an unpatentable abstract idea or an unpatentable piece of information itself cannot be patentable. That can't be right. The method of cloning Dolly is patentable, but Dolly might not be patentable, right? So it can't be that the output dictates whether the method is patentable. Well, Your Honor, I think where the output is itself data, the method of generating data is itself only the combination of data. So even if that's not true as a general matter, it's certainly true here. If you look at the language of Claim 10, Claim 10 says a method of generating a device profile that consists of generating a first set of data, generating a second set of data, and combining them. So is this another way of saying that because a system claim failed, a method claim fails as well? I wouldn't concede that the term device profile was a system claim, but yes, Your Honor, I think it is also the case that as this Court held in Accenture v. Guidewire, if there's no substantive difference between the method claims and their system claim, they should stand or fall together, and I think that is true here as well. The system claim is directed to achieving a device profile. The method is for generating a device profile. Then it goes on and describes different levels of manipulation of data, the generation of the first data, generation of the second data. That's not the same, then, are we? We're not talking about the same type of claiming. Well, I think we are, Your Honor. When you look at the actual language of the claims and you compare them, the things that we are generating in Claim 10 are precisely the things that are being claimed as the component parts of the device profile in Claim 1. I don't understand how you can say this method isn't a process as in one of the statutory subject matter categories. Your Honor, it is clearly a process in some sense. It generates things. It creates a step to generate something. Yes, Your Honor. But it cannot be an abstract idea. Well, Your Honor, I think first I would suggest that if all I am generating is data and all I am using to generate that data is other data, just calling it a method should not, in fact, change the conclusion. If that were true, addition would be patentable. I'm generating the number 4 by adding 2 and 2, and if I wrote that as a method claim, we would say that's patent-eligible subject matter. And I just don't think that's consistent. No, because it's an abstract idea. Hence, the mathematical equations, scientific laws of nature, you know, all these other things. That's why the Supreme Court created the very exception in Benson to avoid a formula. Your Honor, while I believe you don't have to get there, I think it is also sufficient, as the District Court concluded, to conclude that the method claims here are, in fact, directed to an abstract idea. They are not limited to any particular device, much less a specific machine. They do not transform a physical article to another state or thing. Are you suggesting that perhaps the claim should have directed the method to achieving a certain result? I think, Your Honor, that a method claim to be patentable and not be an abstract idea has to work in the real world, has to be limited in a particular way to generate actual tangible things or results. And there is nothing here in Claim 10 that suggests that it is doing any such thing. The very thing it is doing is taking data, combining two pieces of data together, and the thing it is generating is not a machine. It's not a device. It is a device profile, which is, in turn itself, just information. And so I think the – I think this Court's cases are – What is – Mr. Lumley, what is Claim 10? Because what caused me to pause as I was trying to understand this technology is when it says generate first data and then it claims how to do it by measured chromatic stimuli and device response characteristic functions and all this other stuff. First, I didn't know what that meant. I read it in the specification, and now I think I understand it. But suppose this was generating a device profile. And suppose that generating first data step was actually defining a novel way to perform an activity that would create what is effectively a new variable that would be valuable as an end use in the process. So that when they say measured chromatic stimuli, suppose this whole patent was about how you can, for the first time ever, never before known, measure chromatic stimuli and why that would be very valuable to a process. I think it would be possible to write a claim that would cover the process of generating that information and using it in the real world. This is not that claim. Not only does it not actually give you specific new information here, the claim refers to any way to use measured chromatic stimuli, but also the output is simply a method of generating a device profile that describes the properties of a system, information. So if I had a new way of writing a manual for a car, at the end of the day if all I am generating is information, what I suggest is that the Supreme Court's case law and this court's case law suggests that that's insufficient. I don't know if that's right. Suppose I come up with a new method for determining white blood cell counts in your body. And then all of the steps that follow, I mean the whole method is going to be to determine a piece of information, the white blood cell count in your body, but the method steps are physical. I'm going to withdraw blood from you, and then I'm going to perform a series of process steps that are totally unique, never before known, and the output of all of this will simply be a number, the measure of white blood cell count in your body. That's only data, but yet the series of steps I feel like can take it outside the realm of an abstract idea. Your Honor, if the series of steps were itself physical, I think that could be true, although even then, the Supreme Court's decision in Mayo gives me pause there. Me too, but yeah. It seems to me to describe precisely that circumstance. We drew blood, we analyzed the blood, we generated information, and the court says that was insufficient unless the actual physical steps were themselves novel. And that case I think suggests that while you could imagine a circumstance in which the physical steps are new and sufficiently different that they justify a patent, merely saying, well, the data is new, is insufficient under Mayo. In any event, it's worth noting here that there is no such machine. There are no such physical process steps. And I think even if one were to conclude that that sort of claim could be patentable, this is not that sort of claim. This is instead at most granting everything that Petitioner argues for, trying to read in a processor device and hardware limitations. It is at most a claim to generating information in the context of a general purpose computer system. And this court has repeatedly said that that is insufficient in the Dealer Tract case, in the Accenture case, in the Fort Property case. I don't understand. Are you saying that this is a general purpose computer? No. Let me be absolutely clear. This is not a general purpose computer. There is no computer at all in this claim. Well, there's the sensors. Well, there are not claimed sensors, Your Honor. The Petitioner suggests that the specification indicates that some of this information can be collected by a sensor or by a micro-densometer. But there's nothing in the claim language of any of these claims that requires that as a limitation. These claims can be performed by me looking at a color and saying, that colors off a bit. I think we should change it. Okay. But even if you're wrong about that and they're right that it is either a special purpose computer or a general purpose computer, that doesn't end your argument. Exactly right, Your Honor. So what I'm suggesting is that in the alternative, even if we were to lose on all of those grounds, it is still the case that the device they want to read into these limitations, a processor device, which they themselves define as either a general purpose processor or a special purpose processor, could be either one, they say, is just not enough of a physical addition to the claims to make it patentable. It's precisely the kind of unspecified, generic reference to computer technology that this Court has repeatedly said is in violation. What do we make then of the claim, for example, where we have a generating first data for I read now the Claim 10, a device dependent. It goes on and says through the use of measured chromatic stimuli and a device responsive characteristic functions. How do you do that without a computer? Well, Your Honor, I think the answer is you could, it depends entirely on how much information you want to include in measured chromatic stimuli. So one thing I could do is I could look at the sky and I could say it's bright, it's dark, it's a particular shade of blue, it's another shade of blue. I could hold a color wheel up against it. I'm measuring chromatic stimuli against it. And you could do something similar with spatial stimuli. Now, as I suggested at the outset, it is entirely possible to write claims to very specific devices and algorithms that perform these things. And those claims might be patentable. But this is not such a claim. It's stated right there, right where it says through the use of a, let's say, specialized computer or a processor to measure chromatic stimuli, then this would be a different claim. Absolutely. And I think that would at least be a much closer case. But there is nothing here to suggest that the efforts that petitioners make to read in those technologies, I think, just fly in the face. It seems to me when I read your argument that you're saying that the problem here is that the claim just stops and never takes you into the use of a general or a special purpose computer. Exactly. It just stops. And when you look at that, all you have is data. That's correct, Your Honor. If there are no further questions, I will give the court back its time. Thank you, Mr. Lovely. Mr. Edmunds. I think there's been some conflation of when we talk about something that is abstract, if the panel says that a device profile is non-statutory, that doesn't mean that it's abstract. It doesn't mean it's an abstract idea. So there's a statement that, well, if it's non-statutory, then you can't have a process. I think that that's just an incorrect statement of law. There's a statement that Claim 18 has means plus function limitations. This court's case law has said that if there are claims that have specific computer and device limitations in them, that's indicative of statutory subject matter. I think it comes the other way. It's not being asserted, though, right? No, it's not. But it's still, the case that I've seen says that the court, it's still indicative that this is not a disembodied concept because you can draw a claim that has a specific device to it. As far as the machine or transformation test, Bilkey says that you can transform electronic data to, you can change the nature and use of it. That's one of the things that's happening here. There is a practical result. Distortions in images are able to be corrected. So under at least Bilkey, you have transformation. It's certainly tied to a device, which is a dimensional. Even if the court says it's not a machine, it's still tied to a machine under the machine transformation test. Under Bilkey, you're using a machine in order to transform data. And that says that you have an end result, a what. And your opponent's saying that here there's no what. That your method ends up, and your system ends up with just data. A device profile. It doesn't matter about, I mean, it seems to me your opponent would say Bilkey doesn't even apply because there is no machine. You haven't claimed it. I hear that. I have two other points to make. I know I'm short on time. Counsel said it might be possible to have more specifics. I think if you look at the dependent claims, you'll find some of those more specifics that have been conceded to be possible. Lastly, in terms of whether this can be done by head and hand, I think the court should reread the declaration of our expert, Dr. Canizo. I think it is crystal clear from his declaration, which is the only summary judgment evidence before the court, as opposed to argument, which is not evident, that this cannot be done with head and hand. It has to be done with a computer. It's just too complicated. I thank both counsel for their argument. The case is taken under submission. All rise. The court is adjourned until 10 o'clock tomorrow morning. Thank you.